FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2011 AUG 26 P 12: 58

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | | |
|---|---|---|
| STEVEN KARL EDWARD BRADFORD | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. WDQ-10-3619 |
| OFFICER E. PRUITT, *et al.* | * | |
| Defendants | * | |

\*\*\*

## MEMORANDUM

For the following reasons Defendants' Motion to Dismiss or for Summary Judgment will be granted. ECF No. 12. The Court determined that no hearing was necessary. *See* Local Rule 105.6 (D. Md. 2011).

## Background[1]

Plaintiff, Steven Karl Edward Bradford ("Bradford"), alleges that on March 10, 2010 at about 4:55 p.m., he got into a fight with another inmate while returning to his housing unit from the dining hall. ECF No. 1 at p. 4. Officer E. Pruitt ordered both inmates to stop fighting and to get down on the ground. Bradford states that he complied with the order, but Pruitt "maliciously and sadistically" sprayed him with mace for five to eight seconds. After he was maced, Bradford was handcuffed and taken to the medical department.

In the medical unit, Bradford was placed in a holding cell and remained handcuffed. At about 5:30 p.m. he asked for a shower or to be allowed to wash the mace off of his face and body when Lt. C. Widdowson came to the holding cell to take pictures of his injuries. He says that Widdowson told him, "this is what you get" and "I bet you'll think about what is happening to

---

[1] In reviewing the motion for summary judgment, Bradford's evidence "is to be believed, and all justifiable inferences are to be drawn in [his] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

you now the next time you want to act like a fool." ECF No. 1 at p. 6. Bradford states that he was in severe pain from the mace and was attempting to wipe the mace out of his eyes when one cuff was removed for the pictures. He says Widdowson threatened that "if you move again I would hate to break such an expensive camera over your head." *Id.* Bradford pleaded with Widdowson for permission to wash the mace from his eyes, and she taunted him with statements like, "burn baby burn." *Id.*

At 8:00 p.m., Bradford was taken to disciplinary segregation where he was strip searched. He says he had not received any medical treatment when he was returned to the cell although he had mace all over his clothes and body. Bradford states that during the strip search, the officers were coughing and gagging because of the large amount of mace on him and his clothes. ECF No. 1 at p. 7. Bradford again asked for a shower and told the officers his body was severely burning. An officer involved in the search said he would ask Sgt. Kestler if Bradford could take a shower, but when the officer returned he said Kestler had denied permission for a shower. Bradford says he washed off in the sink but was not able to remove most of the mace. *Id.* On March 11, 2010, Bradford asked officers on the 3:00 to 11:00 shift if he could take a shower and again stated he was in pain from the burning mace. Again, Kestler denied Bradford a shower and fresh linens. Bradford alleges that he suffered from the mace for two days.

The Defendants assert that Bradford was seen fighting another inmate, Ronald Cox. ECF No. 12 at Ex. A, p. 14. Bradford was seen striking Cox in the back; a short while later Bradford was seen with a weapon. Responding officers, Pruitt, F. Johnson, and C. Yocca, arrived at the fight and ordered the men to stop fighting; they did not comply. *Id.* After several short bursts of pepper spray, Bradford and Cox separated and complied with orders. Bradford and Cox are

confirmed members of opposing prison gangs, the Crips and the Gangsta Disciples. *Id.*

Bradford was handcuffed and escorted to medical where he was treated for lacerations to his lower lip, an abrasion to his left thumb, and a superficial scratch to his right arm. He was also treated for pepper spray exposure and "released back to custody." *Id.* at pp. 15 and 50 – 51. Cox, suffered six stab wounds to his back, neck and right arm. His injuries required admission to the infirmary for 24 hours of observation. *Id.* at pp. 52 and 53. Pruitt recovered Bradford's weapon, a five and a half inch piece of sharpened metal with white cloth around one end. *Id.* at pp. 15 and 66.

Kestler states that he denied Bradford's request for a shower because he understood that Bradford had been treated for pepper spray exposure. ECF No. 18 at Ex. 1. He states that exposure to pepper spray does not entitle Bradford or any other inmate to a shower out of schedule. He explains,

> It is my understanding from my training as a correctional officer that showering or washing after pepper spray exposure is not an effective remedy, and can even intensify pepper spray's unpleasant effects. The recommended treatment involves wiping excess liquid pepper spray off of skin and waiting for the effects to abate. In my understanding, Mr. Bradford would not have been helped if I had allowed him to shower outside of the normal schedule. . . . . At the time of my interactions with Mr. Bradford, I believed that he had been seen and treated in medical for any injury or discomfort and that the effects of pepper spray would be most effectively abated with time. I also knew that Mr. Bradford had access to running water in the sink in his cell if he disagreed with me and wished to wash.

*Id.* at p. 2. Kestler also notes that he decided to dispose of Bradford's clothes because they had pepper spray and blood on them.[2] *Id.* at p. 1. Kestler obtained clean clothes for Bradford. *Id.*

---

[2] Bradford complained of difficulty breathing after the incident. It was noted that he was talking, his oxygen saturation rate was 94%, and he was not in respiratory distress. ECF No. 12 at Ex. A, p. 50.

Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

4

## Analysis

### Excessive Force

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This court must look at the need for force; the relationship between that need and the force applied; the extent of the injury inflicted; the threat to the safety of staff and inmates reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U. S. 312, 321 (1986). The absence of significant injury is not dispositive of a claim of excessive force. *See Wilkens v. Gaddy*, __ U.S. __, 130 S. Ct. 1175 (2010). The extent of injury incurred is one factor indicating whether the force used was necessary; if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner escaped serious harm. *Id.*

The undisputed evidence is that Bradford was in a fight with another inmate, officers responded to the scene, and pepper spray was used. Bradford maintains that he immediately complied with the order to stop fighting by lying down on the ground. ECF No. 1 and 17. The Defendants maintain that the fight continued after orders were given, requiring more pepper spray to be used. ECF No. 12. They further maintain that even if Bradford's version of events is believed, he admits that when he laid down on the ground he was not restrained and had just been observed using a weapon on another inmate. ECF No. 18. That Pruitt was not the only officer who found it necessary to disperse pepper spray, weighs against Bradford's claim that her actions were malicious and sadistic. *Id.*

5

The need for pepper spray was created by Bradford's actions, and the possibility that he had a weapon that he could use to assault an officer or renew his assault on Cox. The Eighth Amendment does not require correctional officers to ignore safety risks. The use of pepper spray was the minimal force necessary to insure that both inmates could be restrained and safely removed from the area. The Defendants are entitled to summary judgment on this claim.

## Medical Claim

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003), *citing Wilson v. Seiter*, 501 U.S. 294, 297 (1991). To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the defendants' actions or failures to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires objective proof that the plaintiff was suffering from a serious medical need and that the prison staff were subjectively aware of the need for medical attention but failed to provide it. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that

6

risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virgiinia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) *quoting Farmer* 511 U.S. at 844. With the requisite subjective knowledge, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted. *See Farmer*, 511 U.S. at 844. The reasonableness of the actions taken is judged in light of the defendant's actual knowledge of the risk. *Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000); *citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

In his complaint Bradford alleges that he never received treatment for the pepper spray used on March 10, 2010, and he was forced to suffer in pain for two days. The allegations are primarily against Widdowson, who he claims verbally harassed him after his requests for assistance with the pain caused by the pepper spray, and Kestler, who he claims denied his requests for a shower. ECF No. 1. In an administrative remedy procedure grievance, Bradford said that he had been forced to wait for 45 minutes in the medical department because only one nurse was on duty. ECF No. 12 at Ex. B, pp. 29 and 30. He further claims she "never washed the mace off of me." *Id.* at p. 30. The investigation of Bradford's grievance determined that medical staffing was in accordance with contractual obligations, and Bradford was treated as directed by the pepper spray manufacturer. *Id.* at p. 35. He was assessed by the Infirmary RN, the Director of Nursing, and the Physician's Assistant and determined not to be in acute distress. *Id.* It appears Bradford's claim is a disagreement with the type of treatment provided for pepper

spray; he maintains a shower was the proper treatment. Disagreements over proper medical care do not state a §1983 claim unless exceptional circumstances are alleged. *See Wright v. Collins*, 766 F.2d 841, 849(4th Cir.1985), *citing Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3rd Cir.1970).

Bradford has failed to establish that either Widdowson or Kestler prevented him from receiving proper medical treatment. To the extent either Defendant knew Bradford was in pain, Kestler's affidavit regarding his understanding of how pepper spray exposure is treated indicates he knew that the discomfort was temporary. Widdowson's alleged verbal harassment, without evidence that she prevented Bradford's proper medical care, does not establish a deliberate indifference to a serious medical need. "Beyond [actual] knowledge . . . the officer must also have 'recognized that his actions were insufficient' to mitigate the risk of harm to the inmate arising from his medical needs." *Iko v. Shreve*, 535 F. 3d 225, 241 (4th Cir. 2008), *quoting Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir.2004). If the allegations against Widdowson are true, her statements were at most unprofessional. Claims against her will be dismissed. The remaining Defendants are entitled to summary judgment on the medical care claims. Bradford's Motion for Appointment of Counsel will be denied.

8/25/11
Date

William D. Quarles, Jr.
United States District Judge

8